MARGARET ANN SOWERS, by her Next Friend, WALTER F. SOWERS, Plaintiff v. FORSYTH WAREHOUSE COMPANY, trading as STAR WAREHOUSE, Original Defendant, and CITY OF WINSTON-SALEM, Additional Defendant.

(Filed 12 January, 1962.)

**1. Municipal Corporations § 39—**
    Where a claim for personal injuries resulting from a defect in a sidewalk is not filed with the municipality within the time specified in its charter and there is no allegation or evidence of incapacity or disability of claimant excusing the failure to file the claim within the time limited, an action against the city on the claim is properly nonsuited.

**2. Negligence § 34—**
    Ordinarily, an abutting property owner is not under duty to keep the

sidewalk in a safe condition and may not be held liable for injuries resulting from a defect in the sidewalk unless the sidewalk was constructed by the property owner or the property owner causes or contributes to the existence of such defect.

**3. Same— Evidence held insufficient to show liability of abutting landowner for defect in sidewalk.**

Water from a downspout on defendant's warehouse passed under a metal strip covered with some inch and a half of concrete, level with the contiguous sidewalk. For a distance of some 12 inches from the curb the concrete over the metal strip became broken, and the exposed metal strip rusted. Plaintiff was injured when she stepped on the exposed metal strip and her heel was cut by a jagged edge of the metal. *Held:* Even though the evidence disclosed that the defect had existed for a sufficient length of time to give the abutting property owner notice thereof, nonsuit as to such owner was properly entered in the absence of evidence that it either constructed the sidewalk or the drain thereunder, or had in some manner caused the defective condition, or that it was required by statute or ordinance to keep the sidewalk in repair.

HIGGINS, J., dissents as to defendant Warehouse Company.

APPEAL by plaintiff from *Crissman, J.,* January 23, 1961 Term of FORSYTH.

On May 30, 1959, plaintiff and two other young ladies were walking westwardly, three abreast, along the concrete public sidewalk on the north side of Seventh Street in Winston-Salem. Plaintiff, who was next to the curb, stepped into a defective place in the sidewalk and was injured.

Plaintiff, by her next friend, instituted this action December 15, 1959, against defendant Warehouse Company. Later, on August 31, 1960, the City of Winston-Salem was made a party defendant.

The Warehouse Company admitted it owned "a tract of land on the north side of the sidewalk abutting on Seventh Street" and that a warehouse was constructed on its said property in 1946.

Plaintiff alleged the Warehouse Company, to allow rain water from the roof to escape, "constructed under the sidewalk on Seventh Street a culvert leading from a downspout at the side of the building under the pavement and through the curb to the pavement or gutter of Seventh Street"; that, when installing the culvert under the sidewalk, the Warehouse Company "removed a portion of the paved sidewalk, placed in the paving of the sidewalk a piece of thin sheet iron approximately four feet long equal to the width of the sidewalk, and approximately two feet wide, and laid a thin sheet of concrete over the sheet iron"; that "(t)he thin sheet of concrete was built level with the surface of the sidewalk and was approximately only about an inch or an inch and a half in thickness"; that "(w)ater ran under the sheet iron and the concrete covering"; that, "(i)n the course of time,

the thin sheet iron rusted and fell partly away, leaving only a thin shell of cement over the culvert under the sidewalk through which the water ran"; that, "(a) portion of the thin sheet of cement along the sidewalk next to the curb and for a distance of about 12 inches inside the curb broke away, leaving a jagged hole and also a part of the sheet metal projecting into the hole"; and that "weeds were permitted to grow at each side of the hole in the culvert . . . thus obscuring or partly obscuring, the view of the defect in the sidewalk." Plaintiff alleged defendants, notwithstanding they knew or should have known of the existence of this defective condition, were negligent in that, being under the legal duty to maintain said sidewalk in a reasonably safe condition for use by the public, they failed to repair said culvert and sidewalk.

Plaintiff alleged she stepped into the hole in the culvert and that the rusted sheet metal cut a severe gash in her left heel.

Both defendants denied negligence and pleaded plaintiff's contributory negligence in bar of her right to recover. In addition, the City of Winston-Salem pleaded plaintiff's failure to present notice of her claim and to institute suit within the time prescribed by Section 115 of its Charter in bar of plaintiff's right to recover against it.

The only evidence was that offered by plaintiff; and, at the conclusion thereof, the court, allowing defendants' motions therefor, entered judgments of involuntary nonsuit as to both defendants and dismissed plaintiff's action. Plaintiff excepted and appealed.

*J. F. Motsinger and Deal, Hutchins & Minor for plaintiff appellant.*
*Hudson, Ferrell, Petree, Stockton & Stockton and Norwood Robinson for defendant Warehouse Company, appellee.*
*Womble, Carlyle, Sandridge & Rice for defendant City of Winston-Salem, appellee.*

BOBBITT, J. It was stipulated that Section 115 of the Charter of Winston-Salem provides:

"All claims or demands against the City of Winston-Salem arising in tort shall be presented to the board of aldermen or said city or to the mayor, in writing, signed by the claimant, his attorney or agent, within ninety (90) days after said claim or demand is due or the cause of action accrues; no suit or action shall be brought thereon within ten (10) days or after the expiration of twelve (12) months from the time said claim is so presented, and, unless the claim is so presented within ninety (90) days after

the cause of action accrued and unless suit is brought within twelve (12) months thereafter, any action thereon shall be barred."

Plaintiff was injured May 30, 1959. It was stipulated that "no notice of claim was presented to the defendant, the City of Winston-Salem, by the plaintiff, Margaret Sowers, or by anyone in her behalf." Plaintiff's action against the City of Winston-Salem was instituted August 31, 1960.

In *Carter v. Greensboro*, 249 N.C. 328, 331, 106 S.E. 2d 564, the rule (relevant to such charter provisions) established by our decisions is stated by *Higgins, J.*, as follows: "Ordinarily, the giving of timely notice is a condition precedent to the right to maintain an action, and nonsuit is proper unless the plaintiff alleges and proves notice. (Citations) However, there is an exception to the rule. The plaintiff may relieve himself from the necessity of giving notice by alleging and proving that at the time notice should have been given he was under such mental or physical disability as rendered it impossible for him by any ordinary means at his command to give notice; and that he actually gave notice within a reasonable time after the disability was removed. (Citations)"

Plaintiff did not plead she had given notice as required by Section 115 nor did she plead any facts tending to show her mental or physical inability to give the required notice. It appears from the evidence: Plaintiff became sixteen years of age on June 2, 1959. She had completed the tenth grade. Thereafter, she completed the eleventh grade (1959-1960) and was in the twelfth grade at the time of trial. Immediately after her injury, she was in the hospital one week and thereafter confined to her bed at home for a week or so. The injury to her left heel required that she use crutches and a cane for about six weeks. On the afternoon of May 30, 1959, a few hours after plaintiff was injured, Walter Sowers, plaintiff's uncle, and Cletus Sowers, plaintiff's father, inspected the defective place in the sidewalk; and Bennie S. Orrell, at the request of plaintiff's mother, made photographs thereof. Moreover, Walter Sowers was appointed next friend for plaintiff on December 15, 1959. In this connection, see *Rowland v. Beauchamp*, 253 N.C. 231, 116 S.E. 2d 720, and cases cited.

Plaintiff's failure to comply with the requirements of Section 115 of its charter constitutes a bar to her alleged action against the City of Winston-Salem. This was sufficient to require that the court grant the motion of the City of Winston-Salem for judgment of involuntary nonsuit.

Hereafter, we consider whether the evidence was sufficient to re-

quire submission to the jury as between plaintiff and the Warehouse Company.

Plaintiff's *evidence* tended to show the facts narrated below.

On May 30, 1959, there was a paved sidewalk, about five feet wide, along the north side of Seventh Street. A grass plot, estimated as one or two feet wide, was between the north edge of the paved sidewalk and the south wall of the one-story warehouse building. There were no entrances or exits in this wall from Oak Street down to Cherry Street. A downspout carried water from the roof of the warehouse building to the foot of said wall. Water then flowed through a drain or culvert, passing under the paved sidewalk and through a break in the curb, into Seventh Street. A metal strip approximately twelve inches wide, at the top of this underground drain or culvert, extended from the curb to the wall of the building. Concrete, estimated as one to one and a half inches in depth, covered this metal strip where it passed under the sidewalk. This concrete covering constituted a portion of the surface of the sidewalk.

The defective portion of the sidewalk where plaintiff stepped was next to the curb. Here, the concrete surface was broken and the metal strip exposed. The hole in the sidewalk extended from the curb back into the sidewalk a distance estimated as being some twelve to eighteen inches and extended some twelve inches (east-west) along the sidewalk. No broken pieces of concrete were there on May 30, 1959. The edges of the concrete around the hole were dark. Weeds were growing out of the hole. After plaintiff's injury, the metal strip was split "right down through the center." Orrell testified: "It was rusty, and it had split, and one piece was mashed down and the other was still holding up." Plaintiff was injured when her left heel was cut by some portion of the metal strip.

Plaintiff's witnesses testified to said defective condition of the sidewalk when observed by them *after* plaintiff was injured. No witness testified to having observed said defective condition at any time prior to plaintiff's injury. Even so, we think the evidence, when considered in the light most favorable to plaintiff, was sufficient to support a finding that the hole in the sidewalk exposing the metal cover of the culvert had existed for such length of time as to give notice of the defective condition of the sidewalk to a person charged with the legal duty of exercising due care to maintain the sidewalk in a reasonably safe condition. Our task is to determine whether *the evidence* was sufficient to support a finding that the Warehouse Company was charged with such legal duty.

Plaintiff offered no evidence to support her allegations that the

Warehouse Company, after the sidewalk had been paved, removed a portion thereof, constructed the drain or culvert and placed a covering of concrete on the metal strip. (Note: Plaintiff did offer, *as against the City of Winston-Salem,* a portion of its further answer and defense in which the city alleged, upon information and belief, facts in support of plaintiff's said allegations.) There was no evidence as to when or by whom the sidewalk was paved, or as to whether it was paved before or after the drain or culvert was installed, or as to when or by whom the drain or culvert was installed, or as to whether the concrete covering was or appeared to have been constructed at a time different from the time the entire sidewalk was constructed.

Thus, the narrow question confronting us is this: Is the fact that the drain or culvert was the means by which water from the roof of the warehouse building was carried into Seventh Street sufficient to impose on the Warehouse Company the legal duty to maintain the public paved sidewalk under which the water flowed in a reasonably safe condition for use by the public?

"With respect to the duty to construct, maintain, clean, or otherwise care for sidewalks, the general rule in this country is that no such duty rests upon the owners or occupants of abutting premises, in the absence of statute or ordinance imposing it upon them." 25 Am. Jur., Highways § 65; 40 C.J.S., Highways § 253, p. 291; Annotations: 41 A.L.R. 212, 93 A.L.R. 799; 115 Am. St. Rep. 993. As stated by *Winborne, J.* (now *C.J.*) in *Klassette v. Drug Co.,* 227 N.C. 353, 362, 42 S.E. 2d 411, "in so far as pedestrians are concerned, any liability of owner, or of occupant of abutting property for hazardous condition existent upon adjacent sidewalk is limited to conditions created or maintained by him, and must be predicated upon his negligence in that respect."

In *Boetsch v. Kenney* (N.J.), 154 A. 194, and in *Gainfort v. 229 Raritan Avenue Corporation* (N.J.), 22 A. 2d 893, cited by plaintiff, the factual situation was quite different from that now under consideration. In *Boetsch,* the case was submitted and the plaintiff, a pedestrian, recovered from the abutting landowner on the theory (supported by evidence) "that the defendant had broken the pavement and made a hole therein, and that thereafter he failed to exercise reasonable care that the hole and condition so created should not make the highway unsafe for passing pedestrians." In *Gainfort,* as stated in plaintiff's brief, "the facts were that the former owner of the abutting property had a 550 gallon tank under the sidewalk, which tank he removed, then filled in the excavation and built a new sidewalk over it. The new sidewalk settled causing holes from which plaintiff fell and was injured."

In our research, the decision most favorable to plaintiff's position is *City of Louisville v. Metropolitan Realty Co.* (Ky.), 182 S.W. 172. There a drainpipe with metal covering extended from defendant's building across the public sidewalk. Water from the roof flowed through a downpipe and then through said drainpipe to the street. The evidence was held insufficient to show when and by whom these drains were constructed. However, the evidence did show that defendant owned the building and that these drains served its property exclusively. It was held the defendant, as abutting landowner, had the primary duty to keep the portion of the sidewalk crossed by the drain in good repair for use by pedestrians. A pedestrian fell when he stepped on the metal covering over the drainpipe, which metal covering, from rust or other causes, had holes in it. In a prior action, the pedestrian had recovered judgment against the City of Louisville. The City of Louisville brought suit against the Metropolitan Realty Company and recovered on the ground the abutting landowner was primarily liable for damages proximately caused by negligence in respect of the metal covering over said drainpipe.

The facts in the cited Kentucky case differ from those here considered in that the defective metal covering constituted a part of the surface of the public sidewalk and was constructed and intended for pedestrian use. In this respect, the Kentucky case was similar to many cases where the abutting owner or occupant is held liable for a defective condition *of the covering* over an opening or vault in the sidewalk, constituting a part of the surface of the public sidewalk, constructed and in use for the exclusive benefit of the abutting owner or occupant. Annotation: 62 A.L.R. 1067; 31 A.L.R. 2d 1334. In this connection, see *Markham v. Improvement Co.,* 201 N.C. 117, 158 S.E. 852.

Here, it was not intended that pedestrians should walk upon the metal strip at the top of the underground drain or culvert. It was intended that pedestrians should walk on the concrete covering over the metal strip. This constituted a part of the surface of the public sidewalk. There is no evidence the metal strip was insufficient to support the concrete covering. So far as the evidence discloses, the concrete sidewalk over this metal strip was in good condition except where the concrete near the curb had been broken. There is no evidence as to what caused the concrete near the curb to break. It would seem that greater use would be made by pedestrians of portions of the five-foot sidewalk other than that next to the curb.

It comes to this: Where water is carried from the premises of an abutting landowner through an underground pipe or covered culvert to the city street, and a concrete sidewalk is constructed over such pipe or such covered culvert, and the sidewalk is broken to the extent

the pipe or covered culvert is exposed, is the abutting landowner liable to a pedestrian for injuries caused by the defective condition of the sidewalk in the absence of evidence that the abutting landowner either constructed the sidewalk or that he was required by statute or ordinance to keep it in good repair or that he had in some manner caused the defective condition in the sidewalk. We are constrained to answer in the negative.

It may be, if the full facts were disclosed, the law would impose upon the Warehouse Company the duty to exercise due care to keep the portion of the sidewalk over said culvert in good repair. However, when consideration is limited to the facts adduced by plaintiff's evidence, we are of opinion, and so decide, that the evidence was insufficient to support a finding that the Warehouse Company was guilty of a breach of legal duty.

Having reached the conclusion that plaintiff's action against the City of Winston-Salem is barred and that plaintiff's evidence is insufficient to make out a case of actionable negligence against the Warehouse Company, we need not decide or discuss whether, as contended by both defendants, plaintiff's action is barred by her contributory negligence.

Affirmed.

HIGGINS, J., dissents as to defendant Warehouse Company.