EMANUEL L. JOHNSON AND WIFE, DORIS A. JOHNSON v.
CITY OF WINSTON-SALEM

No. 7221DC226

(Filed 2 August 1972)

1. Municipal Corporations § 42— tort claims against city — notice —
   waiver — knowledge by city employee

   Knowledge by some municipal employees of the incident in question did not constitute a waiver by the municipality of a city charter provision requiring that written notice of a tort claim be given to the mayor or the board of aldermen within 90 days after the cause of action accrues.

2. Municipal Corporations § 42— tort claims — notice — estoppel — knowledge by city employees

   A municipality is not estopped to deny notice of a tort claim to the mayor or board of aldermen by the fact that some municipal employees had knowledge of claimant's injury.

3. Municipal Corporations § 21— clogged sewer — insufficiency of evidence of negligence

   In an action to recover for damages allegedly sustained when a sewer line owned and operated by defendant municipality became clogged and sewage backed up and flowed into plaintiff's residence, plaintiff's evidence was insufficient to show that there was a defective condition in the sewer lines or that any defective condition was of such a nature that defendant should have known of it and taken precautions to remedy the defect.

   Judge VAUGHN concurs in the result.

APPEAL by plaintiffs from *Billings, Judge,* 18 October 1971 Session, District Court, FORSYTH County.

Plaintiffs instituted this action to recover for damages to real and personal property allegedly caused by the clogging of sewer lines owned and operated by the defendant municipality which resulted in raw sewage backing up and flowing into plaintiffs' residence on 4 January 1970. Plaintiffs alleged in paragraph number IV of their complaint "[t]hat defendant

had for a period of time permitted the sewer lines serving plaintiffs' home to become clogged with all manner of debris, and had permitted others using it to use material which slowed and clogged the sewer line . . ." causing damage for which they had filed a claim with Mr. Kemp Cummings, but that defendant municipality had refused to pay. Plaintiffs alleged in paragraph number V of their complaint "[t]hat the City impliedly warranted to furnish services reasonably safe and suited to plaintiffs' needs and not to injure plaintiffs on their property by a breach of their contractual obligations . . . ", but that by failing to inspect the sewer main periodically and to remove the accumulation of foreign substances, the defendant breached the implied contract for which they also seek recovery.

After first generally denying plaintiffs' allegations, defendant asserted in its answer that the plaintiffs' failure to install a back pressure or check valve when the difference in elevation between the sewer main and plaintiffs' house was less than four feet was in violation of Section 23-16 of the Winston-Salem City Code and thus a plea in bar to their claim for breach of contract. As its other defense, defendant asserted that: "[a]lthough the plaintiffs have alleged a purported cause of action for breach of implied warranty and contractual obligations, the complaint is bottomed on the tort action of negligence, so that Section 115 of the City Charter, requiring notice, is applicable"; that "Section 115 of the Charter of the City of Winston-Salem . . . requires written notice of loss to be given to the Board of Aldermen or Mayor within 90 days after the cause of action in tort accrues"; and that plaintiffs' failure to comply with Section 115 was a plea in bar to their claim for negligence.

At the conclusion of plaintiffs' evidence, counsel for defendant moved for a directed verdict under G.S. 1A-1, Rule 50, on the grounds that plaintiffs' evidence was insufficient to go to the jury either on the issue of breach of contract or of negligence, if construed as a tort claim. Following arguments on the motion, the trial court ruled that this was a tort action, that the required notice was not given and that the motion by defendant for directed verdict should be allowed. Accordingly judgment was entered, and plaintiffs appealed.

*Pettyjohn and Frenck, by H. Glenn Pettyjohn, for plaintiff appellants.*

*Womble, Carlyle, Sandridge and Rice, by Allan R. Gitter and Roddey M. Ligon, Jr., for defendant appellee.*

MORRIS, Judge.

The evidence tends to show that plaintiffs called City Hall on 8 December 1969 when they noticed the commode was slow in flushing. Three city employees and a sewer truck were dispatched to the scene where a sewer line in front of plaintiffs' house was full of water but not overflowing. The city employees opened the sewer main but did not know what caused the stoppage which resulted in some leakage on the floor of plaintiffs' basement. A city employee, who was the foreman of the sewer truck at that time, testified that he did not make periodic inspections before or after that occasion because no other complaints were received until 4 January 1970 and that in his opinion, the nature of the trouble was not sufficient to cause such concern or suspicion as to require periodic checks. There is also evidence which tends to show that the stoppage on 4 January 1970 was caused by "crusher run," a mixture of sand and gravel, which was not present on the previous occasion when the sewer main was unstopped. The only evidence presented to show how the crusher run got there was a supposition on the part of the sewer truck foreman that the manhole lid may have been misplaced while the street was being dragged and oiled. When the raw sewage began to flood plaintiffs' house on 4 January 1970, defendant sent several employees to free the sewer line of obstruction and help plaintiffs clean up. Mr. Kemp Cummings, Jr., a claims investigator for the city, also went to plaintiffs' home that afternoon and made certain photographs while personally inspecting the damage. Mr. Cummings stayed at the Johnson residence two and a half or three hours on 4 January 1970 but did not authorize or suggest that any of the damaged property be hauled off. In response to a request for an admission by plaintiffs' attorney, Mr. Cummings deposed that he was employed by defendant municipality to investigate and report on claims, but "that I have no authority to negotiate or settle claims against the City of Winston-Salem." The evidence tends to show that Mr. Johnson and Mr. Cummings "discussed flying and this type of thing," but does not indicate

that their conversation included any mention of a claim against defendant.

Attached to plaintiffs' complaint as Exhibit A is a copy of a purported claim against the defendant municipality, but the record fails to reveal a letter which allegedly accompanied Exhibit A and was requested by Mr. Cummings. The purported claim is dated 12 February 1970 and merely consists of an inventory of expenses and valuation of damaged property, comparing present value with original cost. The inventory itself contains no mention of the damage—when, where and how it occurred—nor does it expressly indicate that plaintiffs considered it a claim against the city or that they were considering the defendant liable. The evidence tends to show that shortly after plaintiffs sent the inventory to Mr. Cummings on 12 February, Mr. Cummings and Mr. Stewart, an attorney for the city, came to see plaintiffs, but "[h]e did not have too much to say to me." Mr. Stewart promised to come back and he did, but their conversation was basically the same. At this last meeting which plaintiffs had with any representative of the city, which was six to eight weeks after the flooding, Mr. Stewart and Mr. Gitter, counsel for defendant appellee, looked through some of the items taken from the house and "commented on my outdoorsness." The evidence fails to show that any representative of the defendant municipality ever represented to plaintiffs that the city was liable, but does tend to show, however, that plaintiffs never indicated they were filing a claim or holding the city liable until 8 October 1970 when they sent a letter to the Mayor of Winston-Salem demanding damages, which was some nine months after the incident occurred.

[1] Plaintiffs' principal contention on appeal is that their evidence, when considered in the light most favorable to them, was sufficient to go to the jury on the issue of negligence, even if they did not strictly comply with the notice provision for tort claims under Section 115 of the Winston-Salem Charter. Relying upon *Webster v. Charlotte*, 222 N.C. 321, 22 S.E. 2d 900 (1942) ; *Perry v. High Point*, 218 N.C. 714, 12 S.E. 2d 275 (1940) ; *Graham v. Charlotte*, 186 N.C. 649, 120 S.E. 466 (1923), and numerous cases from other jurisdictions, plaintiffs urge this Court to hold that under the circumstances of this case the defendant municipality waived its formal requirement of written notice to the Mayor or the Board of Aldermen because some of its employees knew about the incident.

"The contention of plaintiff that the mayor was one of the first persons to arrive after the accident, and that therefore the city had notice of it, does not relieve plaintiff from the necessity of making a demand. The law requires that a demand, in writing, be made upon the board of aldermen, stating the nature and infliction of the injuries, etc., and the *amount of damages claimed therefor*. The city could not be charged with such notice simply because the mayor happened to help care for intestate after he was injured.

The town authorities cannot waive this statutory requirement that a demand in writing be made, even if the mayor should have imagined that a suit was to be brought. In *Borst v. Sharon*, 48 New York Supp., 996; 14 American Digest, 1991, the Court says that 'The municipal officers of a town cannot waive any statutory requirements as to notice of claim imposed for the protection of the municipality.' " *Pender v. Salisbury*, 160 N.C. 363, 366-367, 76 S.E. 228 (1912); see also *Nevins v. Lexington*, 212 N.C. 616, 194 S.E. 293 (1937).

We find plaintiffs' contention without merit.

In the alternative, plaintiffs argue that defendant, through the actions and representations of its employees, "lulled" plaintiffs through the notice period and should now be estopped to deny having notice.

"Ordinarily, the giving of timely notice is a condition precedent to the right to maintain an action, and nonsuit is proper unless the plaintiff alleges and proves notice. . . . However, there is an exception to the rule. The plaintiff may relieve himself from the necessity of giving notice by alleging and proving that at the time notice should have been given he was under such mental or physical disability as rendered it impossible for him by any ordinary means at his command to give notice; and that he actually gave notice within a reasonable time after the disability was removed. . . ." (Citations omitted.) *Carter v. Greensboro*, 249 N.C. 328, 331, 106 S.E. 2d 564 (1959).

[2, 3]  The case of *Sowers v. Warehouse*, 256 N.C. 190, 123 S.E. 2d 603 (1962), involved the same provision of the Winston-Salem Charter (§ 115) as the case at bar which requires 90-day notice of tort claims. There our Supreme Court held that where

Johnson v. City of Winston-Salem

a claimant fails to file within the prescribed time and there is no allegation or evidence of incapacity or disability, an action against the city is barred and nonsuit proper. We find no authority in North Carolina to support plaintiffs' contention that the defendant municipality may be estopped to deny notice when some employees had knowledge of the injury, but there is no evidence that the *mayor* or *board of aldermen* were aware of the claim until after the time period had expired. Compare *Perry v. High Point, supra.* We are inclined to the view, although we do not so hold, that the Board of Aldermen in considering tort claims is acting in  a public or governmental function, and in that circumstance the doctrine of estoppel is not applicable. See *Sykes v. Belk,* 278 N.C. 106, 179 S.E. 2d 439 (1971). Even if the doctrine of equitable estoppel were applicable, the facts necessary to apply the doctrine are not present in the case at bar. Similarly, we hold that there was insufficient evidence of a defective condition in the sewer lines or that it was of such a nature and extent that the defendant should have known of the condition and taken precautions to remedy the defect. For, equally strong reasons, the insufficiency of evidence of negligence dictates the affirmance of a directed verdict in defendant's favor. *Pennington v. Tarboro,* 184 N.C. 71, 113 S.E. 566 (1922) ; *Waters v. Roanoke Rapids,* 270 N.C. 43, 153 S.E. 2d 783 (1967).

As for plaintiffs' other assignment of error, suffice it to say that plaintiffs failed to present sufficient evidence of a contract between the parties for sewer services, express or implied, and thus could not go to the jury on the issue of breach of contract. The whole trial proceeded on the theory of negligence and this assignment of error is overruled.

Affirmed.

Judge GRAHAM concurs.

Judge VAUGHN concurs in the result.