EMANUEL L. JOHNSON AND WIFE, DORIS A. JOHNSON v. CITY OF WINSTON-SALEM

No. 76

(Filed 26 January 1973)

Municipal Corporations § 42— tort claims against city — notice — knowledge by city employee

In an action to recover for damages allegedly sustained when a sewer line owned and operated by defendant municipality became clogged and sewage backed up and overflowed into plaintiff's residence, plaintiff's notice given to the city claims investigator and to the city attorney fell short of the statutory requirement that written notice of tort claims be given to the board of aldermen or to the mayor within ninety days and plaintiff's written notice to the mayor was given more than nine months after the occurrence; therefore, plaintiff's action was properly dismissed.

Justice LAKE dissenting.

Justice HUSKINS joins in the dissenting opinion.

ON *certiorari* to the North Carolina Court of Appeals to review its decision filed August 2, 1972, (15 N.C. App. 400, 190 S.E. 2d 342) affirming a judgment entered in the District Court of FORSYTH County dismissing the plaintiffs' action.

The plaintiffs alleged that on January 4, 1970, their dwelling and furnishings were severely damaged by the reverse flow of sewage from the city's main line through the plaintiffs' connecting line into their house. They further alleged that the reverse flow and the damages resulted from the negligence of the city's street maintenance crew in that they permitted sand and gravel from their resurfacing operations to accumulate in the manhole at the juncture blocking the outflow at the point of connection and forcing raw sewage through the plaintiffs' connecting line into the house.

The complaint further alleged, and the evidence disclosed, that on December 8, 1969, the city's maintenance crew removed

Johnson v. City of Winston-Salem

a partial obstruction from the plaintiffs' sewer line and, there-fore, had notice of some defect. The plaintiffs sought to allege two bases for their cause of action: (1) That the city impliedly contracted to furnish reasonably safe sewer service suitable to the plaintiffs' needs and not to injure plaintiffs' property and that in furnishing the service the city was acting in a pro-prietary capacity and not in the performance of a governmental function; (2) that the city had negligently caused and permitted the city's main line and the plaintiffs' outflow line to become clogged and as a result of the pressure, the contents of the main line were forced through the joinder line causing severe damage to the dwelling and the furnishings.

The defendant filed answer admitting certain paragraphs with respect to the street work, but denied negligence. As fur-ther defenses the defendant alleged that the plaintiffs had not shown any breach of contract, that the cause of action they sought to allege was based on negligence, and that the plaintiffs had failed to file with the board of aldermen or the mayor a written claim for loss within ninety days after the claim arose as required by Section 115 of the city charter.

The plaintiffs introduced evidence which in material sub-stance disclosed the following: The plaintiffs in October, 1967, purchased their newly constructed house on Milton Drive within the limits of Winston-Salem. Their plumbing fixtures were attached to the city sewer line. On December 8, 1969, the water backed up in the commode, drained slowly, but did not overflow. The plaintiffs notified the city inspector who opened the line without difficulty by the use of a pressure pump. Nothing indicated any defect or anything out of the ordinary in the occurrence and no further trouble developed until the following January.

On the morning of January 4, 1970, however, all members of the Johnson family were at church, but when Mr. Johnson returned home at 12:30 p.m. he found a reverse flow of sewage pouring into his home which covered the floor to a depth of several inches, spilled out into the other rooms, saturated car-pets, rugs, clothing, and other furnishings as well as the building.

When the city officials charged with the duty of maintain-ing the sewer line responded immediately to the plaintiffs' call, two crews worked for about three hours before the reverse

Johnson v. City of Winston-Salem

flow was stopped. The stoppage seemed to have been caused by the presence of sand and gravel at the connection. This sand and gravel had been forced into the connection apparently by a road scraper or grader.

After the obstruction was removed and normal operation restored, the maintenance crew assisted the plaintiffs in the clean-up operation, removed from the home many of the damaged articles and after cleaning and repairing them, returned them to the plaintiffs. At the request of the clean-up crew, the plaintiffs made a list of the damaged articles, giving their original cost and their estimated value after they had been returned. The list was delivered to Mr. Cummings, the city's claim agent. This delivery appears to have been on February 12, 1970. Subsequently, there was some discussion between the city attorney and Mr. Cummings on the part of the city, and the plaintiffs, but no agreement was reached and no formal claim was filed.

On October 8, 1970, more than nine months after the occurrence, the plaintiffs gave the mayor this notice:

"Dear Mayor. This is to notify that on January fourth and fifth, I experienced a great deal of difficulty with the sewer system of Winston-Salem, North Carolina. A back up in the sewer line caused a great deal of damage to my home and personal property. I have been in contact with some of the City's agents but have received no satisfaction. I thought it might be of help to write to you concerning this matter. I will appreciate all you can do for me. Sincerely, E. L. Johnson."

Mr. Johnson testified: "Other than this letter and what I have testified to, there was no other contact with the City." The other testimony related to Mr. Johnson's dealings with the maintenance crew, the claim agent, and the city attorney.

The city charter was introduced in evidence. Section 115 provided that: "All claims or demands against the City of Winston-Salem arising in tort shall be presented to the board of aldermen of said city or to the mayor, in writing, signed by the claimant, his attorney or agent, within ninety (90) days after said claim or demand is due or the cause of action accrues; . . . and, unless the claim is so presented within ninety (90) days after the cause of action accrued and unless suit is brought

within twelve (12) months thereafter, any action thereon shall be barred."

The trial court adjudged that the plaintiffs' action was in tort and that they had failed to file the written notice of loss with the city aldermen or mayor within ninety days as required by the city charter. The court entered judgment, on defendant's motion, sustaining the defense and dismissing the claim.

Within the time required, the plaintiffs prosecuted an appeal in the Court of Appeals which affirmed the judgment. Our writ brought the case here for further review.

*Pettyjohn and Frenck by H. Glenn Pettyjohn for plaintiff appellants.*

*Womble, Carlyle, Sandridge & Rice by Allan R. Gitter and Roddey M. Ligon, Jr. for defendant appellee.*

HIGGINS, Justice.

The plaintiffs' claim is based on a negligent failure of the city properly to inspect, to discover and remove defects, and to keep in good repair its sewer line along Milton Drive. The evidence indicated the city's street maintenance crew had caused sand and gravel to accumulate at the point of joinder between the city's main sewer line and the plaintiffs' branch line thus causing the back-up and overflow into the plaintiffs' home. The plaintiffs introduced ample evidence of the resulting damage.

After hearing the evidence, the trial court properly concluded the plaintiffs' claim was based on the defendant's tortious failure properly to maintain its sewer line and that the plaintiffs' claim was never filed with the board of aldermen and was not filed with the mayor until more than nine months after the plaintiffs sustained their damage.

The evidence disclosed that the agents of the sewer department and of the city's claims department had immediate notice of the plaintiffs' damages and the facts upon which their claims were based. However, the trial court and the Court of Appeals based decision on the plaintiffs' failure to give the board of aldermen or the mayor the written notice required by Section 115 of the defendant's charter, Chapter 232, Private Laws, 1927.

The lawmaking body of the State required that notice of tort claims in writing should be filed with the board of aldermen

or the mayor within ninety days of the time the damage occurred. The board of aldermen and the mayor direct the city's governmental operations. They actually employ hundreds of agents to carry on the city's activities. Obviously, a requirement that a claim against the city be filed with the board of aldermen or the mayor is a reasonable requirement. They are charged with the duty of considering and passing on the validity of the claims. Notice to other agencies does not comply with the requirements of the law.

In the case of *Sowers v. Warehouse,* 256 N.C. 190, 123 S.E. 2d 603, this Court discussing Section 115 of the city charter used this language:

"Plaintiff did not plead she had given notice as required by Section 115 nor did she plead any facts tending to show her mental or physical inability to give the required notice. . . .

"Plaintiff's failure to comply with the requirements of Section 115 of its charter constitutes a bar to her alleged action against the City of Winston-Salem. This was sufficient to require that the court grant the motion of the City of Winston-Salem for judgment of involuntary nonsuit."

The action involved an injury resulting from the defendant's defective sidewalk.

In *Carter v. Greensboro,* 249 N.C. 328, 106 S.E. 2d 564, this Court said:

"Ordinarily, the giving of timely notice is a condition precedent to the right to maintain an action, and nonsuit is proper unless the plaintiff alleges and proves notice. (Citing authorities.) However, there is an exception to the rule. The plaintiff may relieve himself from the necessity of giving notice by alleging and proving that at the time notice should have been given he was under such mental or physical disability as rendered it impossible for him by any ordinary means at his command to give notice; and that he actually gave notice within a reasonable time after the disability was removed. (Citing authorities.)"

In addition to the cases cited in Sowers and Carter, see the following: *Webster v. Charlotte,* 222 N.C. 321, 22 S.E. 2d

900; *Foster v. Charlotte,* 206 N.C. 528, 174 S.E. 412; *Dayton v. Asheville,* 185 N.C. 12, 115 S.E. 827; *Pender v. Salisbury,* 160 N.C. 363, 76 S.E. 228.

The statute and case law of North Carolina provide that as a part of a cause of action founded in tort against a municipality, the complaint must allege and the evidence must disclose that a written claim signed by the plaintiff or his attorney be filed either with the board of aldermen or the mayor of the city within ninety days after the cause of action accrued. Otherwise the action is barred and will be dismissed. Anything short of a written claim signed by the plaintiff or his attorney and filed with the board of aldermen or the mayor within the ninety days, required a dismissal of the action.

In *Pender v. Salisbury, supra,* the plaintiff's intestate was thrown from a wagon as the result of a defect in the street. The required notice of the claim for the wrongful death was not given. The plaintiff sought to supply the defect by showing the mayor of the city was actually present at the time of the accident and had first hand information of the injury. This Court said: " 'The municipal officers of a town cannot waive any statutory requirement as to notice of claim imposed for the protection of the municipality.' "

Although the evidence in this case was sufficient to disclose that the claim agent and the attorney of the city had first hand information of the plaintiffs' damage and the cause of it, this knowledge was not sufficient to supply the requirement that a written claim be filed with the board of aldermen or the mayor.

The statute and the decided cases do not permit the court to repeal the plain wording of the requirement that notice in writing be given to the named officials within ninety days from the injury. Relaxation of the rules is within the jurisdiction of the agency that makes them—that is the General Assembly. The legislative hall—not the courthouse—is the proper place to change the rule. The stability of court decisions is of great value. Thus, we feel required to hold that the trial court in entering the judgment dismissing the action, and the Court of Appeals in affirming the judgment, acted within the requirements of law. Nothing need be added to the opinion of the Court of Appeals on other questions discussed in the briefs. Though we sympathize with the plaintiffs in their loss, we do not feel at liberty to disregard the statute and the decided

cases. Hence, we conclude that the judgment of the Court of Appeals should be

Affirmed.

Justice LAKE dissenting.

As the majority opinion states, the evidence indicated that the city's street maintenance crew caused sand and gravel to fall into the city's main sewer line, obstructing that line so that sewage backed up and overflowed into the home of the plaintiffs, damaging their property severely. The majority's sole ground for affirming the allowance of the city's motion for a directed verdict is the failure of the plaintiffs to give written notice of their claim to the mayor within the time, 90 days, specified therefor in the charter of the city.

The record shows the following, undisputed facts:

Kemp P. Cummings, Jr., is a full time employee of the city, his title being "Claims Investigator." The scope of his employment includes investigations of and reports on claims filed against the city. After his investigation and report, such claim is presented to the City Attorney for an opinion as to the City's liability. Mr. Cummings, himself, has no authority to negotiate settlement of claims. He always makes a point of advising claimants that he has no such authority. He is the only employee of the city who carries the title of "Claims Investigator."

While the flooding of the plaintiffs' home was still in progress, on Sunday, 4 January 1970, an employee of the city's water and sewer department went to the plaintiffs' residence, talked to the male plaintiff and observed the flooding. This employee and the crew under his direction being unable to remove the obstruction from the sewer main with the use of rods, he summoned a second crew of city employees, who, some three hours later, were successful in unstopping the sewer. After the overflow was halted about 3:30 p.m., the crew of city employees assisted until after dark in mopping up the accumulated overflow of water and sewage on the floors and in the basement of the plaintiffs' home.

While this flooding of the home was still in progress, Mr. Cummings, the city's only "Claims Investigator," received notice of it. He went there immediately and observed the condition

Johnson v. City of Winston-Salem

and the city employees cleaning up the house. He talked to the male plaintiff about 30 minutes on that occasion and had several discussions with him since that time "specifically about the damage to his home." He personally inspected the damage and made photographs of the conditions he observed.

The next day, Monday, 5 January 1970, a crew of city employees returned to the house and cleaned and disinfected it, removing many articles of the plaintiffs' belongings from the house to their boat shed. On the day of the flooding, or the following day, the male plaintiff made an inventory of the damage to the home and of the articles of personal property damaged by the flooding, showing the original cost and the then present value of each item. A copy of this inventory of damaged articles was mailed by the plaintiffs to Mr. Cummings "as he had suggested," on 12 February 1970, 39 days after the occurrence. Mr. Cummings, then accompanied by a city attorney, had given the male plaintiff his card and told him where to send the inventory. Later, six or eight weeks after the flooding, two of the city's attorneys went to the home of the plaintiffs and again discussed the matter with the male plaintiff. He carried them to the boat shed where the damaged articles were stored and they examined them. Having heard nothing further from representatives of the city, the male plaintiff wrote a letter to the mayor on 8 October 1970, more than 90 days after the flooding.

The question which arises upon this evidence is: When, through the negligence of the city, its sewer main becomes obstructed so that the home of the plaintiff is flooded with sewage and the city, with full knowledge of the condition, sends its official "Claims Investigator" and its attorney to inspect the damaged property and to confer with the owner, and the owner, pursuant to the request and suggestion of the "Claims Investigator," promptly sends to him a written inventory of the damaged articles, showing their value, may the city escape liability for the sole reason that the property owner, thus believing his claim was in process of adjustment, did not hand to the mayor, in person, a written notice of his claim within the time specified in the city's charter? In my opinion, this question should be answered, "No."

The majority opinion cites in support of its conclusion the following cases: *Sowers v. Warehouse,* 256 N.C. 190, 123 S.E. 2d 603; *Carter v. Greensboro,* 249 N.C. 328, 106 S.E. 2d 564; *Webster v. Charlotte,* 222 N.C. 321, 22 S.E. 2d 900; *Foster v.*

*Charlotte,* 206 N.C. 528, 174 S.E. 412; *Dayton v. Asheville,* 185 N.C. 12, 115 S.E. 827; *Pender v. Salisbury,* 160 N.C. 363, 76 S.E. 228. Each of those cases is distinguishable on its facts from the present case. In two of them, *Carter v. Greensboro, supra,* and *Webster v. Charlotte, supra,* the plaintiff prevailed, notwithstanding his failure to give the notice required by the city charter. These are discussed below. In none of the cases, with the exception of *Pender v. Salisbury, supra,* is there any indication in the reported decision that the city had any knowledge whatever of the plaintiff's alleged injury until it was sued. In *Pender v. Salisbury, supra,* there is nothing to indicate any knowledge by the city of a contention that there was basis of a claim against it except that the mayor, individually, attempted to assist the deceased at the time and scene of the accident. In none of these cases was there the slightest suggestion that any representative of the city discussed the plaintiff's claim with him or did anything to cause the plaintiff to believe his claim was under consideration for settlement.

The validity of provisions such as that in the charter of the City of Winston-Salem is unquestionable. As this Court said in *Pender v. Salisbury, supra,* and again in *Foster v. Charlotte, supra,* "The purpose is to give the municipal authorities an early opportunity to investigate such claims while the evidence is fresh, so as to prevent fraud and imposition." This being the purpose, this Court, in *Perry v. High Point,* 218 N.C. 714, 12 S.E. 2d 275, reversed a judgment of dismissal granted because of failure to comply technically with such a charter provision, saying that such provisions "require only a substantial compliance, without the technical nicety necessary to pleadings." There, the Court quoted with approval the following statement in 43 C.J., p. 1192 (see 63 CJS, Municipal Corporations, § 925):

> "Such statutory requirements being for the benefit of the municipality, in order to put its officers in possession of the facts upon which the claim for damages is predicated and the place where the injuries are alleged to have occurred, in order that they may investigate them and adjust the claim without the expense of litigation, a reasonable or substantial compliance with the terms of the statute is all that is required; and where an effort to comply with such requirements has been made and the notice, statement or presentation when reasonably construed is such as to accomplish the object of the statute, it should be regarded as sufficient."

In *Graham v. Charlotte,* 186 N.C. 649, 120 S.E. 466, the plaintiff was held entitled to recover on the ground that his notice complied substantially with the statute although the city contended it was defective in content. Thus it has been clearly established by the decisions of this Court that such a provision should not be interpreted or applied so as to convert it into a shield for injustice through the denial by the city of a meritorious claim of which it actually had notice within the time specified in the charter.

In *Carter v. Greensboro, supra,* a three year old child, horribly burned by negligence of the city employees, was permitted to recover though no notice of his claim was given the city until nine years after the occurrence. There, this Court properly said:

> *"Ordinarily,* the giving of timely notice is a condition precedent to the right to maintain an action, and nonsuit is proper unless the plaintiff alleges and proves notice. * * * *However,* there is an exception to the rule. The plaintiff may relieve himself from the necessity of giving notice by alleging and proving that at the time notice should have been given he was under such a mental or physical disability as rendered it impossible for him by any ordinary means at his command to give notice; and that he actually gave notice within a reasonable time after the disability was removed. * * *

> "In this case the plaintiff, as a part of his cause of action, alleged his failure to file the notice within the time fixed by the defendant's charter and at the same time he alleged facts which, if true, brought his case within the exception. * * * Under such circumstances is it not the policy of the law and the duty of judges to guard his rights with jealous care and to see that the door of the courthouse is not closed to him when he is without fault? * * * *Failure to give earlier notice does not justify nonsuit."* (Emphasis added.)

The foregoing statement in the Carter case is quoted with approval in *Sowers v. Warehouse, supra.* This exception is also recognized in *Foster v. Charlotte, supra,* in *Pender v. Salisbury, supra,* and in *Terrell v. Washington,* 158 N.C. 281, 73 S.E. 888. This exception is not founded upon any language of the charter provision in any such case. It is engrafted upon the legislative

provision by judicial action to prevent a statute, designed to shield municipalities against fraud and injustice, from being converted into an instrument of injustice. That is also the purpose of the judicial modification of the statutory provision so as to make substantial compliance therewith sufficient.

Again, in *Webster v. Charlotte, supra,* this Court, speaking through Chief Justice Stacy, said:

"Undoubtedly, we have decisions to the effect that *in the absence of some valid excuse * * * compliance* must be shown with the provisions of a city charter requiring notice of claim as a condition precedent to the institution of an action against a municipal corporation for the recovery of damages." (Emphasis added.)

In that case, also, a nonsuit of an action for personal injuries to a small child was reversed though notice of the claim was not given until five years after the injury. Again, in *Dayton v. Asheville, supra,* the Court said that such notice is a prerequisite to an action against the city for the partial taking of or injury to the plaintiff's land "in the absence of a valid excuse."

It would be difficult to find a more valid excuse for failure to give written notice to the mayor within the time specified in the charter than the plaintiffs had in this case under the circumstances disclosed by this record. It is not necessary to hold that knowledge of the injury and of the cause thereof, acquired by two full crews of city employees in the course of some six hours of opening the sewer and cleaning up the resulting contamination of the plaintiffs' home, makes compliance with the charter provision unnecessary. Here, we have far more than that. The official "Claims Investigator" of the city came and investigated the matter while the flooding of the home was in progress, returned on at least one other occasion, and requested the plaintiffs to submit to him their inventory of damage, which written inventory was mailed to him well within the time allowed by the charter for such notice. Thereafter, on at least one occasion, the attorneys for the city came and inspected the damaged articles in the presence of the male plaintiff. Under these circumstances, to permit the city to escape all responsibility for the invasion of the plaintiffs' home by contaminating filth, due to the city's negligence, for the sole reason that the plaintiff did not send to the mayor a written communication until some seven months later, is to convert the statutory shield into an

instrument of harshness and injustice, which we properly refused to do in *Carter v. Greensboro, supra.*

The charter provision is valid, but the actions of the city Claims Investigator and the City Attorney are such as to estop the city from asserting this defense. *Sykes v. Belk,* 278 N.C. 106, 179 S.E. 2d 439, is not inconsistent with such a holding. There we said, "It is generally recognized in North Carolina that the doctrine of estoppel will not be applied against a municipality in its governmental, public or sovereign capacity." What we were talking about there was estoppel of a city to exercise its governmental discretion in the location of a municipal building, but, even so, the statement was dictum for we expressly said that the circumstances of that case did not present facts requiring application of the doctrine of equitable estoppel since there was no showing that the plaintiffs in that case had been prejudicially misled. The operation of a sewer system, being chiefly for the private advantage of the compact community, is a proprietary function for the negligent exercise of which the municipality is subject to liability. See: *Clark v. Scheld,* 253 N.C. 732, 117 S.E. 2d 838; *Carter v. Greensboro, supra.*

For the doctrine of equitable estoppel to apply, it is not necessary that the conduct of the defendant be with fraudulent intent. It is sufficient that its "Claims Investigator" and the attorneys misled the plaintiffs into the reasonable belief that the city, aware of their claim, was processing it for settlement and thus further, formal demand was unnecessary. The record clearly shows the plaintiffs were led so to believe.

In *Pender v. Salisbury, supra,* Justice Brown, speaking for the Court, said, "The town authorities cannot waive this statutory requirement that a demand in writing be made, even if the mayor should have imagined that a suit was to be brought." Waiver, a voluntary relinquishment of a known right, does not rest on the same basis as an estoppel. In *Pender v. Salisbury, supra,* the jury actually found the city was not negligent and this Court said there was no error in the trial with respect to that issue. Thus, the reference therein to waiver is in the nature of a dictum. In any event, there was in that case nothing to suggest a waiver and certainly no basis for a claim of estoppel in the mere fact that the mayor, apparently nearby when the deceased fell off the step of the city's fire wagon and was killed, tried to assist the dying man.

After the time for giving notice has expired and the injured party has, with no reasonable excuse, failed to give the required notice, the city's defense is absolute and no official, employee or attorney may waive it, expressly or by conduct. It is quite a different thing, in my opinion, to say that conduct of the city's "Claims Investigator" and its attorney, which reasonably leads an uninformed layman to believe that he has given the city all the information it requires for the handling and settlement of his claim, does not affect the city's right to assert that such layman is barred from recovery by his delay in filing a written statement of claim with some other city official.

To reverse the decision of the Court of Appeals, which in turn affirmed the judgment of the district court, does not require the overruling of any decision cited by it or in the majority opinion.

Justice HUSKINS joins in this dissenting opinion.