LOUISE MILLER v. CITY OF CHARLOTTE, A MUNICIPAL CORPORATION

No. 64

(Filed 5 November 1975)

Municipal Corporations § 42— claim against city — notice to city manager — requirement of notice to council — substantial compliance

    City charter requirement that written notice of a claim for damages against the city be given to the city council within 90 days after the date of the injury was substantially and reasonably met where written notice of plaintiff's claim was filed with the city manager within the 90 days prescribed by the charter, referred by him to the city attorney, and subsequently presented to the city council by the city attorney; therefore, the trial court erred in dismissing plaintiff's claim on the ground that notice had been given to the city manager rather than to the city council.

ON *certiorari* to review the decision of the Court of Appeals, reported in 25 N.C. App. 584, 214 S.E. 2d 313 (1975), affirming the judgment of *Falls, J.,* 25 November 1974 Schedule B Jury Session of MECKLENBURG Superior Court.

On 3 June 1973, plaintiff, Mrs. Louise Miller, commenced this action against the City of Charlotte to recover damages in the sum of $15,000 for injuries sustained in a fall on a city street. The complaint alleges, in summary, that on 7 July 1970, as plaintiff stepped out of her car onto a city street, a recently paved portion of the street caved in, causing her to fall and sustain serious hip, knee and back injuries. The complaint further alleges that the city was negligent in failing to make proper repairs to the street and in failing to properly inspect the repaired street and discover the defective area.

Defendant answered, denying negligence and raising the further defense of lack of notice to the city as required by Section 9.01 of the Charter of the City of Charlotte. That section provides:

    "*Notice of damages.* No action for damages against the City of Charlotte of any character whatever, to either per-

son or property, shall be instituted against the city unless within ninety (90) days after the happening or infliction of the injury complained of, the complainant, his executors or administrators, shall have given notice to the City Council of such injury in writing, stating in such notice the date, time and place of happening or infliction of such injury, the manner of such infliction, the character of the injury and the amount of damages claimed therefor, but this shall not prevent any time of limitation prescribed by law from commencing to run at the date of happening or infliction of such injury or in any manner interfere with its running."

Thereafter, by leave of the court, plaintiff amended her complaint to allege notice to the city of her injury through correspondence between her attorney and city officials. The following is the most pertinent:

I. A letter dated 30 July 1970 from plaintiff's attorney to the city manager, indicating carbon copy to the city attorney:

"Re: Mrs. Louise G. Miller

     D/A  7/7/70

Dear Mr. Veeder:

     This letter is to advise that I represent Mrs. Miller and she advises me that she was injured at 1210 Oaklawn Ave. in the City of Charlotte when the street pavement gave way beneath her causing her to fall. I have personally looked at this hole which was left after her fall and the same is located in the westbound travel portion of Oaklawn Avenue adjacent to the address 1210 Oaklawn Avenue.

     In view of the fact that Mrs. Miller was rather seriously injured in the fall and has required medical attention, I feel compelled to assist her in her claim for damages against the City. I called this condition to the attention of the City Attorney several days ago, but I am not sure that the street has been repaired.

     If the appropriate representative of the city would like to discuss Mrs. Miller's claim, I will be happy to discuss the same with him. If I do not hear from you, I will assume that you are not interested and file the appropriate lawsuit to protect Mrs. Millers' [sic] interest.

     Thank you for your cooperation."

II. A letter dated 3 August 1970 from the city manager to plaintiff's attorney, indicating carbon copy to the city attorney:

"Dear Mr. Liles:

This will acknowledge your letter of July 30, 1970 making claim against the City of Charlotte on behalf of Mrs. Louise G. Miller for injuries she reportedly received in a fall at 1210 Oaklawn Avenue on July 7, 1970.

Your claim has been forwarded to our City Attorney for his study and recommendation."

III. A letter dated 4 August 1970 from the assistant city attorney to plaintiff's attorney:

"Re: Claim of Mrs. Louise G. Miller

Dear Mr. Liles:

Your claim against the City of Charlotte on behalf of Mrs. Louise G. Miller for injuries she reportedly received in a fall at 1210 Oaklawn Avenue on July 7, 1970 has been forwarded to this office for consideration.

As part of the notice required by the City Charter, the amount of injury is to be included. Therefore, if you would submit to this office the monetary amount for which you are claiming, the investigation could then proceed further. It would also be most helpful if you could submit a copy of the medical bills incurred as a result of this incident."

IV. A letter dated 6 August 1970 from plaintiff's attorney to the assistant city attorney:

"Re: Miller v. City

Dear Mr. Buckley:

In reply to your letter of August 4, 1970, Mrs. Miller sustained severe injuries to her foot, ankle, and leg in this fall and is still under the care and treatment of her physician. I would evaluate her claim at this time in the sum of $5,000.00.

I do not have her Doctor's report at this time, but upon receipt of same, I will be happy to discuss its contents with you or any other representative of the City towards some mutually acceptable settlement of her claim.

I understand that an employee of the city, when the hole on Oaklawn was repaired, found a part of Mrs. Millers [sic] shoe and she is interested in recovering the same.

Thank you."

On 17 October 1974, the City of Charlotte moved to dismiss on the grounds that, because plaintiff's notice went to the city manager rather than to the city council as required under Section 9.01 of the Charlotte City Charter, requisite notice was not given. On 6 November 1974, defendant's motion was allowed and an order was entered dismissing the action. From that order plaintiff appealed. The Court of Appeals affirmed the order of dismissal. We allowed *certiorari* on 25 August 1975.

*Casey, Daly and Bennett by Walter H. Bennett, Jr., for plaintiff appellant.*

*Office of the City Attorney by H. Michael Boyd for defendant appellee.*

MOORE, Justice.

The sole question presented by this appeal is: Did the trial court err in dismissing plaintiff's action on the ground that plaintiff filed notice of claim with the city manager rather than the city council, as required by the Charlotte City Charter? The Court of Appeals held not. We disagree.

The general rule in North Carolina on municipal tort notice requirements is stated in *Carter v. Greensboro*, 249 N.C. 328, 106 S.E. 2d 564 (1959), as follows: "Ordinarily, the giving of timely notice is a condition precedent to the right to maintain an action, and nonsuit is proper unless the plaintiff alleges and proves notice. [Citations omitted.] . . . "

Special notice requirements have been justified on the following grounds: (1) To give municipal authorities an early opportunity to investigate such claims while the evidence is fresh, so as to prevent fraud and imposition; (2) to inform defendant of all the facts upon which plaintiff's claim for damages was founded; (3) to enable defendant, after an investigation of the claim within the time fixed by statute to determine whether it should admit liability and undertake to adjust and settle said claim; (4) to prevent additional accidents by allowing the public entity a chance to take precautionary and correc-

tive measures; and (5) to aid in establishing fiscal planning and budgeting based on potential liabilities. *Perry v. High Point,* 218 N.C. 714, 12 S.E. 2d 275 (1940); *Peacock v. Greensboro,* 196 N.C. 412, 146 S.E. 3 (1928); *Pender v. Salisbury,* 160 N.C. 363, 76 S.E. 228 (1912); 56 Am. Jur. 2d, Municipal Corporations § 686, p. 730; 52 N.C. L. Rev. 930 (1974).

We have held, however, that substantial compliance with pre-suit notice requirements is all that is required. In *Graham v. Charlotte,* 186 N.C. 649, 120 S.E. 466 (1923), the Court, citing 6 McQuillin, Municipal Corporations § 2718 [now 16 McQuillin, § 53.163], stated: " ' . . . [A] substantial compliance with the statute is all that is required, and the notice need not be drawn with the technical nicety necessary in pleading.' " This statement was approved in *Webster v. Charlotte,* 222 N.C. 321, 22 S.E. 2d 900 (1942), and *Peacock v. Greensboro, supra. See also Dennis v. Albemarle,* 242 N.C. 263, 87 S.E. 2d 561 (1955); 56 Am. Jur. 2d, Municipal Corporations § 687, pp. 731-32.

In *Perry v. High Point, supra,* a notice of a claim against the city, addressed to the mayor and city council, the statutorily designated recipients, was delivered to the city manager. Since no notice of claim for damages had been given the mayor or the city council, the council refused to recognize or consider the claim. This Court held that delivery of notice to the city manager was sufficient. Justice Schenck, speaking for the Court, stated:

"This Court has held that statutory provisions that written notice be given to City Councils or Boards of Aldermen of cities or towns as a condition precedent to the institution of certain actions against such cities and towns require only a substantial compliance, without the technical nicety necessary to pleadings, since the provisions are in derogation of the common law. *Graham v. Charlotte,* 186 N.C., 649; *Ivester v. Winston-Salem,* 215 N.C., 1.

" 'Such statutory requirements being for the benefit of the municipality in order to put its officers in possession of the facts upon which the claim for damages is predicated and the place where the injuries are alleged to have occurred, in order that they may investigate them and adjust the claim without the expense of litigation, a reasonable or substantial compliance with the terms of the statute is all that is required; and where an effort to comply with such

requirements has been made and the notice, statement, or presentation when reasonably construed is such as to accomplish the object of the statute, it should be regarded as sufficient.' 43 C. J., p. 1192, par. 1962.

" 'Where the board or committee is not in session at the time of service, it is sufficient to direct the notice to the council or other governing body, and then deliver it to the officer having the care and custody of the records and files of such body, within the time fixed by statute. *Kelly v. Minneapolis,* 77 Minn., 76, 79 N.W., 653.' 43 C. J., note p. 1206.

" 'Delivery of notice in the City Clerk's office, to an assistant clerk, in the absence of the Clerk, is properly served. *McCabe v. Cambridge,* 134 Mass., 484; *Kelly v. Minneapolis,* 77 Minn., 76, 79 N.W., 653.' 43 C. J., note p. 1207."

*Accord, Penix v. City of St. Johns,* 354 Mich. 259, 92 N.W. 2d 332 (1958). Other jurisdictions are in accord, requiring only substantial compliance with municipal tort notice statutes. *E.g., Heller v. City of Virginia Beach,* 213 Va. 683, 194 S.E. 2d 696 (1973); *Vermeer v. Sneller,* 190 N.W. 2d 389 (Iowa 1971); *Meredith v. City of Melvindale,* 381 Mich. 572, 165 N.W. 2d 7 (1969).

Two courts have specifically addressed the issue of whether substantial compliance should be required only as relates to the form and content of the notice itself or also as it relates to the manner of service on proper officials. *Seifert v. City of Minneapolis,* 298 Minn. 35, 213 N.W. 2d 605 (1973); *Galbreath v. City of Indianapolis,* 253 Ind. 472, 255 N.E. 2d 225 (1970). Both courts found no logical distinction between the two categories. The Indiana tribunal continued:

"The purpose of the notice statute being to advise the city of the accidents so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary *where such purpose has in fact been satisfied." Galbreath, supra.*

The substantial compliance doctrine and other issues concerning municipal tort notice statutes are discussed in 60 Cornell L. Rev. 417 (1975); 23 Drake L. Rev. 670 (1974); and 46 Ind. L. J. 428 (1970-71).

In the present case, the contents of the notice are clearly sufficient to meet the requirements of the charter. Only the giving of notice to the city manager rather than the city council is questioned.

The city manager is the operating head of the city.

Section 4.21 of the Charlotte City Charter, in part provides:

> "The City Council shall appoint a City Manager who shall be the administrative head of the city government and shall be responsible for the administration of all departments. . . .

> "The City Manager shall: (1) see that within the city the laws of the State and the ordinances, resolutions, and regulations of the City Council are faithfully executed; (2) *attend, at the request of the council, all meetings of the council, and recommend for adoption such measures as he may deem expedient; (3) make reports to the council from time to time upon the affairs of the city and keep the council fully advised of the city's financial condition and its future financial needs;* (4) appoint and remove all department heads and employees of the city except those herein provided to be appointed by the City Council. . . ." (Emphasis added.)

Section 4.23 of the Charlotte City Charter provides:

> "The City Council shall hold the City Manager responsible for the proper management of the affairs of the city and he shall keep the City Council informed of the conditions and needs of the city, and shall make such reports and recommendations as may be requested by the City Council or as he may deem necessary. Neither the mayor, the City Council nor any member thereof shall direct the conduct or activities of any city employee, directly or indirectly, except through the City Manager."

Here, the city manager, well within the time required by the charter, received notice of plaintiff's injury, in writing, stating the date, time and place of the happening of such injury and the manner in which the injury was received. The city manager acknowledged receipt of the notice of this claim and advised plaintiff's attorney that it was being forwarded to the city attorney for his study and recommendation. On 4 August 1970, the assistant city attorney wrote the plaintiff's attorney

requesting additional information as to the monetary value of plaintiff's claim and copies of the medical bills incurred.

On 6 August 1970, plaintiff's attorney answered the assistant city attorney, again outlining the injuries to Mrs. Miller, together with his evaluation of the monetary value of the claim, and stating that he would supply the medical bills at a later date. Thus, long before the ninety-day period in which a notice of claim was required to be filed under the city charter, the city manager, the chief administrative officer of the city, and the city attorney had full and complete information concerning plaintiff's injury and claim. Later, the plaintiff's lawyer furnished the city attorney the statement of medical expenses incurred by reason of the plaintiff's injuries. Thereafter, the assistant city attorney advised plaintiff's attorney:

> " . . . I recommend that you not file a lawsuit until after the City Council has made a decision whether to approve or deny the said claim. Of course, Council's action should they approve the claim would avert a lawsuit; and further should they deny the claim, it would in no way prejudice your right to legal action. . . . "

On 6 April 1971, plaintiff's attorney was advised by the assistant city attorney that upon his recommendation the council had denied payment of the claim for lack of notice. The city relies upon *Johnson v. City of Winston-Salem,* 282 N.C. 518, 193 S.E. 2d 717 (1973). In that case, the ordinance of Winston-Salem required that:

> " . . . All claims or demands against the City of Winston-Salem arising in tort shall be *presented* to the board of aldermen of said city or to the mayor, *in writing,* signed by the claimant, his attorney or agent, within ninety (90) days after said claim or demand is due or the cause of action accrues; . . . and, unless the claim is so presented within ninety (90) days after the cause of action accrued and unless suit is brought within twelve (12) months thereafter, any action thereon shall be barred." (Emphasis added.)

The evidence in that case disclosed that employees of the city sewer department and of the city's claim department had immediate notice of the plaintiffs' damages and the cause of such damages. Such notice was acquired by observation of these city employees and discussion between them, the city attorney and

the plaintiff. No written notice was filed until 8 October 1970, more than nine months after the damage was incurred. On that date, the plaintiff wrote the mayor as follows:

> "Dear Mayor. This is to notify that on January fourth and fifth, I experienced a great deal of difficulty with the sewer system of Winston-Salem, North Carolina. A back up in the sewer line caused a great deal of damage to my home and personal property. I have been in contact with some of the City's agents but have received no satisfaction. I thought it might be of help to write to you concerning this matter. I will appreciate all you can do for me."

The Winston-Salem ordinance required that the claim or demand be presented to the board of aldermen or the mayor, in writing, within ninety days. No written notice was given to any city employee or official that the plaintiff in that case had sustained any damage for nearly nine months after the damage was incurred. Even then, no claim or demand was presented to the board of aldermen or mayor. As one law review article has pointed out, " . . . actual notice by the city of circumstances surrounding an injury is not notice that the injured person intends to present a claim for damages," and therefore the city is not afforded an opportunity to properly investigate and prepare its course of action. 46 Ind. L. J., *supra,* at 438.

In the case under review, the city manager and the city attorney had written, formal notice within thirty days after plaintiff was injured that she expected the city to compensate her for her injuries. Thus, on the facts, the case at bar is distinguishable from *Johnson v. City of Winston-Salem, supra.*

We note that Chapter 58 of the 1975 Session Laws amended the Charter of the City of Charlotte to allow notice of claim to be given "to the City Council or mayor, City Manager and/or City Attorney . . . , " and that Chapter 361 of the 1975 Session Laws enacted a new Statewide statute, G.S. 1-55.1, to provide, " . . . A person with a claim against a city arising in tort or contract must give written notice of the claim to the council or its designee within six months, and commence his action within two years, after the claim is due or the cause of action arises. . . ." Thus, it is clear that the General Assembly recognizes that notice of a claim filed with a responsible official of a city, such as the city manager or the city attorney, or other designee of the council, is sufficient. Admittedly, these statutes

are not applicable to the present case, but they do indicate the legislative intent to broaden rather than further restrict the officials to whom notice of claim may be given.

In the present case had the notice of plaintiff's claim gone directly to the city council, undoubtedly it would have been referred by the council to the city manager for investigation and recommendation. The city manager, in turn, would have referred it to the city attorney. Hence, we hold that when written notice of plaintiff's claim was filed with the city manager within the time prescribed by the city charter, referred by him to the city attorney, and subsequently presented to the city council by the city attorney, the requirements of notice under Section 9.01 of the Charter of the City of Charlotte were substantially and reasonably met and that the Court of Appeals erred in affirming the trial court's dismissal of plaintiff's action.

The decision of the Court of Appeals is reversed and the cause is remanded to that court with direction that it be remanded to the Superior Court of Mecklenburg County for trial in accordance with this opinion.

Reversed and remanded.